We'll hear the final case to be argued. CFTC versus McCrudden. My name is Vincent McCrudden. Good morning, Your Honors. My name is Vincent McCrudden. I'm one of the defendants in this case and I'm representing myself pro se. The other corporate defendants have counsel. This case is unprecedented in its submission, unprecedented in its longevity, and unprecedented in the penalties granted. There are three main issues that need to be addressed. I don't have sufficient time to address all three in detail, so I will address them briefly. They are first, the violation of the federal Rules of Civil Procedure Rule 60B4, the Eighth Amendment, the Sex of Fines Clause, and the abuse of The litigants have an expectation that the Rules of Civil Procedure will be complied with. The litigants in this case originally agreed to terms on a consent order. That consent order was only agreed to under duress and threat. Two months later, however, the plaintiff, the CFTC, agreed to correct the consent order by stipulating that the magistrate would decide the penalty phase. They submitted that stipulation to the court in Docket 174 and even stated that this new stipulation was pursuant to the consent order of permanent injunction previously entered. In June 2017, Hurley abused his discretion and violated the federal Rules of Civil Procedure Rule 60B4 by deliberately interfering with the wishes of the litigants by stating that he would decide the penalty phase. He thus voided the contract consent order by interfering, and by doing so, he violated both litigants' rights to due process. Lawfully, this was a jurisdictional error and also denied the litigants due process that deprived the litigants' notice of opportunity to be heard by a jury. Rule 60B4 of the federal Rules of Civil Procedure provide that a court can relieve a party from a final judgment if the judgment is void, and this court has held that a judgment is void when the court acted in a manner inconsistent with the due process of law. The second issue is the Eighth Amendment violation of the Excessive Fines Clause. I would like to begin by acknowledging that in the case of Hurley v. Indiana, Supreme Court case, Justice Ginsburg outlines a great job of going back to the Excessive Fines Clause, back to the Magna Carta. Although that case is dissimilar, it does argue about a forfeiture grossly disproportionate to the gravity of the offense. Justice Ginsburg stated, protection against excessive punitive economic sanctions secured by that clause is both fundamental to our scheme of ordered liberty and deeply rooted in this nation's history and tradition. In Hurley's ruling, he relied on the three to five factors of the Bozhakian test, which are simply inapplicable to this case since there are no forfeitures, disgorgements, fraud, or even criminal aspects to lawfully apply them. Numerous courts, including this one, has held that the test to determine excessive fines is that the penalty imposed must be Seven U.S.C. 9A1 states, in determining the amount of monetary penalty assessed, the commission shall consider the appropriateness of such a penalty to the gravity of the violation. That would be deemed totally subjective and at the total discretion of the court. But in numerous cases, the courts found that courts should be realistic and not set a figure which is impossible for a defendant to comply with due to lack of monetary resources. Courts have generally continued to consider what a defendant can realistically pay. This would bend towards requiring both the CFTC and the courts adhere to a more objective standard. In short, both Jim Hall at the CFTC when asking for monetary penalties and Hurley must assess the defendant's ability to pay. The only way to Am I right the fine is now $15,000? Yes. Okay. Because it was reduced, right? Yes, sir. Okay. And the original fine was $390,000? That's what the plaintiff CFTC asked for. That was the maximum. But they got $60,000 and then it was reduced by the court, right? Yes, sir. Okay. Good. I just want to make sure I have that right. Thank you. I'm sorry. Go ahead. The only way to consider the defendant's ability to pay is to consider the defendant's net worth, it seems. In many cases that I read, there isn't much talk of reliance on financial affidavits. But in this case, both the CFTC and the court were given financial affidavits, which was ignored. Only when the plaintiff did, did Hurley lower the CMP from $60,000 to $15,000, but still violated the law by simply stating the defendant's financial condition was less than rosy. The defendant simply could not afford to pay the $15,000. The defendant is indigent and has expressed that numerous times to the courts. Lastly is the unlawful client and personal trading bans. The personal trading ban was especially egregious, as Hurley states that the CFTC submissions and requests did not justify a personal trading ban, and then offered to extend the scheduling order so he could simply rubber stamp a penalty that he wanted. I believe this was a blatant violation of the Judicial Conduct and Disability Act of 1980 in assisting with the prosecution. This court must be presented, a court must be presented evidence that determining the propeness of a trading restriction, unless enjoined, there is a likelihood of future violations. The commonly held tests are the egregiousness of the defendant's actions. I won't read those off to you. I'm sorry. But the CFTC offered zero evidence of any of these tests. What has been entered into evidence is that the fund innocently traded futures and stopped voluntarily. From September 2008 to December 2010, when the CFTC submitted this claim, there were no other violations. Similarly, from 2008 until the present, there were no violations. The trading bans were unlawful. Personal trading bans are very rare and only granted in extreme cases usually involving egregious fraud. In no way does this case warrant that draconian penalty of a lifetime client and personal trading bans. As the appellant disclosed in the briefs, Merrill Lynch, Fang Wang, Stevie Cohen, and others can commit fraud and trade for clients, but for four months of innocent trading at the advice of counsel, where the clients doubled their money, can warrant a nuclear trading ban? This is simply not credible and will lower the credibility and public confidence of the public to the courts and the CFTC. Mr. McCrudden, you're over your time. You can finish up. That's it, Your Honor. I just . . . By the way, most courts don't allow non-lawyers to argue at all, and so we do allow pro se's to argue, but our practice is to give them five minutes. Is there anything else you wanted to add at this point? And we also have your briefs. Just that I would ask that you remand the case back to a district court in Florida where I now live. All right. Thank you. We'll take it under advisement. Thank you. And we have some motions. We will reserve decision on those and take them under advisement. I'll ask the deputy to adjourn.